**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SECURE WI-FI LLC, | |
| Plaintiff, | |
| v. | Case No.: 2:24-CV-00047-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**SAMSUNG'S MOTION FOR
SUMMARY JUDGMENT OF INELIGIBILITY UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I.    **INTRODUCTION** ................................................................................................1

II.    **STATEMENT OF ISSUES** .........................................................................3

III.    **STATEMENT OF UNDISPUTED MATERIAL FACTS**..........................3

IV.    **LEGAL STANDARD** ................................................................................6

      A.    Summary Judgment Under Rule 56 ...................................................6

      B.    Patentable Subject Matter Under 35 U.S.C. § 101 ............................6

V.    **ARGUMENT** ..............................................................................................8

      A.    *Alice* Step One: The Asserted Claims are directed to an abstract idea. .................9

      B.    *Alice* Step Two: The Asserted Claims do not  convert a patent-ineligible abstract idea into a patent-eligible invention.......................................13

VI.    **CONCLUSION**..........................................................................................17

i

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  No. 2:07-cv-468, 2009 WL 4723734 (E.D. Tex. Sept. 8, 2009)................................6

*Affinity Labs of Tex., LLC v. DIRECTTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016).........................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .................................................3, 7, 8, 11, 13, 15, 17, 18

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017)........................................................................12

*Bancorp Servs. v. Sun Life Assurance Co. of Canada*,
  687 F.3d 1266 (Fed. Cir. 2012).......................................................................11

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ..................................................................................8, 18

*Bozeman Fin. LLC v. Fed. Res. Bank of Atlanta*,
  955 F.3d 971 (Fed. Cir. 2020)........................................................................14

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).......................................................................18

*buySafe, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014).......................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ......................................................................................6

*Compression Techs. Sols. LLC v. EMC Corp.*,
  No. 12-dv-01746, 2013 WL 2368039 (N.D. Cal. May 29, 2013)...........................11

Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,
  776 F.3d 1343 (Fed. Cir. 2014)....................................................................2, 10

CyberSource Corp. v. Retail Decisions, Inc.,
  654 F.3d 1366 (Fed. Cir. 2011)....................................................................2, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)................................................................14, 15, 19

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016).......................................................................14

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
   60 F.4th 1349 (Fed. Cir. 2023) ...................................................................18

*Impact Engine, Inc. v. Google LLC,*
   2024 WL 3287126 (Fed. Cir. July 3, 2024)...............................................18

*In re BRCA1-& BRCA2-Based Hereditary Cancer Test Patent Litig.,*
   774 F.3d 755, (Fed. Cir. 2014)......................................................................6

*In re Gale,*
   856 F.App'x 887 (Fed. Cir. May 18, 2021)................................................14

*Intell. Ventures I LLC v. Capital One Fin. Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017)..............................................................7, 8

*Intell. Ventures I LLC v. Symantec Corp.,*
   838 F.3d 1307 (Fed. Cir. 2016)...................................................................18

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,*
   132 S. Ct. 1289 (2012) ..........................................................................7, 8, 9

*OIP Techs., Inc. v. Amazon.com, Inc.,*
   788 F.3d 1359 (Fed. Cir. 2015).....................................................................6

*Optis Cellular Tech., LLC v. Apple Inc.,*
   139 F.4th 1363, 1379 (Fed. Cir. 2025) ........................................................7

*Presqriber, LLC v. Amazing Charts, LLC,*
   No. 6:14-cv-461, 2014 WL 12622323 (E.D. TX. 2014) ....................................11

*SAP Am., Inc. v. InvestPic, LLC,*
   898 F.3d 1161 (Fed. Cir. 2018)...................................................................19

*Smartflash LLC v. Apple, Inc.,*
   680 F.App'x 977 (Fed. Cir. 2017)................................................................12

*SmartGene, Inc. v. Advanced Biological Lab'ys, SA,*
   555 F.App'x 950 (Fed. Cir. 2014).................................................................14

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d (Fed. Cir. 2014) ..........................................................................11

*Universal Secure Registry LLC v. Apple Inc.,*
   10 F.4th 1342 (Fed. Cir. 2021)....................................................................17

*Versata Dev. Group, Inc. v. SAP Am., Inc.,*
   793 F.3d. 1306 (Fed. Cir. 2015)...................................................................16

iii

**Statutes**

35 U.S.C. § 101....................................................................................... 1, 3, 4, 7, 9, 20

**Rules**

Fed. R. Civ. P. 56(c).........................................................................................6

## TABLE OF COMMONLY USED ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Samsung | Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| Secure | Secure Wi-Fi LLC |
| '384 patent | U.S. Patent No. 10,694,384 |
| '552 patent | U.S. Patent No. 9,961,552 |
| '005 patent | U.S. Patent No. 9,717,005 |
| POPR | Secure's Patent Owner Preliminary Response IPR2024-01367, Paper No. 7 |
| Asserted Patents | The '384, '552, and '005 patents |
| Asserted Claims | Claims 1-4, 6-14, 17-20, 22-24 of the '384 patent, claims 1-5 and 14-17 of the '005 patent, and claims 10-11, 13-18, and 20-22 of the '552 patent |

## TABLE OF EXHIBITS & NOTES

| Exhibit No. | Description |
|---|---|
| A | U.S. Patent No. 10,694,384 |
| B | U.S. Patent No. 9,961,552 |
| C | U.S. Patent No. 9,717,005 |
| D | IPR2024-01367, Paper No. 7 ("POPR") |
| E | Dr. Akl's Opening Infringement Report |
| F | Dr. Wicker's Rebuttal Noninfringement Report |
| G | Dr. Akl's Deposition Transcript |
| H | Dr. Akl's Rebuttal Validity Report |

\*    Emphasis added unless otherwise noted.

## TABLE OF APPENDICES

| Appendix No. | Description |
|---|---|
| A | Functionality Required by Asserted Claims |
| B | Specification Passages Identifying Use of General-Purpose Computing Hardware and Networking Functionality to Implement the Claimed Abstract Idea |

## I.    INTRODUCTION

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") move for summary judgment that all Asserted Claims of the '384 patent, '552 patent, and '005 patents (Exs. A-C, respectively) are ineligible under 35 U.S.C. § 101.  All Asserted Claims of all Asserted Patents are directed to an abstract idea and include no inventive concept.

As Secure concedes in its response to Samsung's IPR petition, the Asserted Claims are directed to a two-step, "hybrid approach" to wireless communications security, involving: (1) using a "'fake' media access control addresses when transmitting a probe request to an access point;" and then (2) transmitting an "authentic device identifier . . . as part of the connection request to the access point, but only after determining the access point is authenticated."  Ex. D at 1.  The shared specification of the Asserted Patents explains that this process aims to prevent leakage of location information (*i.e.*, improve privacy).  Ex. A at 3:5-7.[1]  But distilled to their core, the claims as a whole are directed to the abstract idea of protecting one's identity when at risk and revealing one's true self once safe.

But this abstract idea—identity masking in the face of threat—is as old as human behavior.  For example, in the 5th century BC, Themistocles, the Athenian general who masterminded the Greek naval victory at Salamis against the Persians, used a pseudonym to conceal his identify after being exiled from Greece.  He was forced to travel through Persian territory, where he risked assassination by pro-Athenian forces and Persian border guards.  Themistocles only revealed his true identify once safe in Persian protection.[2]

---

[1] Unless otherwise noted, all citations to the shared specification of the Asserted Patents herein will be to the '384 patent.

[2] *See, e.g.*, https://en.wikipedia.org/wiki/Themistocles (last visited July 19, 2025).

In the mid-1800s, Harriet Tubman escaped slavery in Maryland and then returned repeatedly to the South to rescue other enslaved people via the Underground Railroad. She did so under extreme risk of capture and execution under the Fugitive Slave Act.[3] To protect herself and those she guided, she used various tactics to conceal her identity and avoid detection by bounty hunters. Once slavery was abolished, Tubman began speaking publicly about her work, later revealing her true identity as an integral member of the Underground Railroad and advocating for civil rights and women's suffrage.[4]

More recently, the same abstract idea to which the Asserted Claims are directed manifests in any number of modern scenarios where individuals seek to reduce privacy risks. For example, a celebrity practices the claimed abstract idea when they make a reservation at a hotel using a pseudonym to avoid tracking by the Paparazzi and then take off their sunglasses and scarf when they're safely inside the hotel (after confirming the identity of the hotel), and revealing their true self to the trusted hotel staff.

Because the Asserted Claims as a whole are directed to conventional human acts that have long been capable of being performed by humans through nothing more than mental processes that "can be performed in the human mind," the Asserted Claims do not warrant patent protection. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims are ineligible where "humans have always performed . . . [the recited] functions"). Moreover, dressing up this abstract idea in claims that specify generic computing elements like

---

[3] *See, e.g.*, https://en.wikipedia.org/wiki/harriet_tubman (last visited July 27, 2025).
[4] *See, e.g.*, https://www.nps.gov/people/harriet-tubman.htm (last visited July 19, 2025); https://www.history.com/articles/underground-railroad-harriet-tubman-strategies (last visited July 19, 2025); https://msmagazine.com/2022/02/08/harriet-tubman-life-myth-misinformation-civil-rights-slavery/ (last visited July 19, 2025).

processors and transmitters does not make them patent eligible.  No limitation of the Asserted

Claims adds "significantly more" to the patent-ineligible concept and therefore includes no

inventive concept.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

Accordingly, under 35 U.S.C. § 101 and the overwhelming weight of case law directed to

patent-ineligible subject matter, the Asserted Claims are ineligible for patent protection as a matter

of law because (1) as a whole, all Asserted Claims are directed to an abstract idea and (2) none of

the Asserted Claims includes any inventive concept.  Samsung's motion for summary judgment

should therefore be granted.

## II.    STATEMENT OF ISSUES

Whether the Asserted Claims[5] of the Asserted Patents are patent-ineligible as a matter of

law under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Secure has asserted the following claims from the Asserted Patents:

| Patent | Claim |
|---|---|
| '384 patent | 1, 9, 17 (independent)<br>2-4, 6-8 (depend from claim 1)<br>10-14 (depend from claim 9)<br>18-20, 22-24 (depend from claim 17) |
| '552 patent | 10, 15, 21 (independent)<br>11, 13, 14 (depend from claim 10)<br>16-18, 20 (depend from claim 15)<br>22 (depend from claim 21) |
| '005 patent | 1, 14 (independent)<br>2-5 (depend from claim 1)<br>15-17 (depend from claim 14) |

---

[5] Despite Secure not having any good faith basis to assert infringement of any claims of the '552 and '005 patents based on the Court's construction of "server," Secure is nevertheless maintaining its infringement claims based on a spurious challenge to Judge Payne's Claim Construction Order. *See* D.I. 77 and Samsung's response, D.I. 80.  Accordingly, Samsung has been forced to expend unnecessary resources and move for summary judgment on ***all*** Asserted Claims across all three Asserted Patents.

All Asserted Claims across all Asserted Patents are directed to methods and systems for connecting an end device to an access point by using a *fake* device identifier and transmitting that identifier in a probe request, receiving a response from an access point, determining if the access point is "authenticated," and then transmitting a connection request to the access point with the real device identifier. *See, e.g.*, Ex. A at claims 1, 9 and 17; Ex. B at claims 10, 15, and 21; Ex. C at claims 1 and 14. Regarding the fake device identifier requirement, the specification does not describe any characteristics of the identifier other than that it "may include a random number and/or a random character." Ex. A at 6:25-27, 7:25-27. Nor does the specification disclose any algorithm or specific process for generating the fake device identifier beyond stating it can be any random number or character.

As for the requirement that the end device "determin[e] . . . that the access point is an authenticated access point," the Court has construed this limitation to mean that the end device must "verif[y the] identity" of the access point "based on known, trusted, and verifiable information." D.I. 75 at 9, 18. Secure's technical expert, Dr. Akl, has opined that Accused Products perform the claimed authentication by comparing information received from the access point in a probe response (specifically, SSID and encryption type) to a list stored in the end device's memory. Ex. E ¶¶ 67-68, 124-127. Such information is publicly broadcast by any access point and can be read by any nearby listening device. Ex. F ¶¶ 155-158; Ex. G at 62:3-9, 124:19-22, 160:23-161:6. Secure's technical expert does not opine, and Secure does not otherwise allege for purposes of its infringement theory, that the claims require that an end device such as an Accused Product perform any process involving a protocol, cryptographic key, or other technical mechanism for verifying the identity of the access point "using known, trusted, and verifiable information" such that the an end device such as an Accused Product can differentiate between a

legitimate access point and a malicious actor that has spoofed the legitimate access point's SSID. If the SSID received from the speaker (i.e., the access point) merely matches with an SSID on the list (which is generated based on publicly broadcast information), Dr. Ak considers that sufficient to satisfy the Court's construction.  Ex. E ¶¶ 67-68, 124-127.

The '005 and '552 patents largely mirror the core functionality of the '384 patent.  The asserted '552 patent claims are directed to methods and systems where an "authenticated access point" list is received from a "server."  Ex. B, claims 10, 15, 21.  Claim 10 (and related dependent claims) also requires that the "fake device identifier" be received from the "server," whereas claims 15 and 21 (and related dependent claims) recite that the end device generates the fake device identifier.   The asserted '005 patent claims, like claim 10 of the '552 patent, require that the "fake device identifier" be received from a "mobile operating server."[6]  Ex. C, independent claims 1 and 14.  Both the asserted '552 patent and asserted '005 patent share the same basic structure as the '384 patent—i.e., the end device sends a fake identifier to the access point, and later sends an authentic device identifier to the access point but only after determining that the access point is authenticated.  Secure concedes in its IPR POPR that all Asserted Patents are directed to this same, two-step "hybrid approach" to computer security.  Ex. D at 1, 9, 24, 29-30.

Finally, it is undisputed that the claims do not require any particular hardware or software beyond generic computing and network components.  *See, e.g.* Ex. A at claim 17 (requiring a "network interface," "processor," "transmitter," and "receiver"), 7:61-67 ("elements of computing device 600 may be arranged or configured for a mobile operating server or an end device. In a very

---

[6] Secure agrees that "server" and "mobile operating server" have the same meaning; and the Court construed the terms together.

basic configuration 602, computing device 600 typically includes one or more processors 604 and a system memory 606."); Ex. B at 7:51-57; Ex. C at 7:46-52; *see also* Appendix B.

## IV.   LEGAL STANDARD

### A.   Summary Judgment Under Rule 56

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 4723734, at *1 (E.D. Tex. Sept. 8, 2009); Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material facts exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Because § 101 patent ineligibility is "an issue of law," summary determination is appropriate.  *In re BRCA1-& BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014); *OIP Techs., Inc. v. Amazon.com*, Inc., 788 F.3d 1359, 1362, 1364 (Fed. Cir. 2015) (affirming dismissal on § 101 grounds); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1379 (Fed. Cir. 2025) (reversing district court's denial of summary judgment under *Alice* Step 1).

### B.   Patentable Subject Matter Under 35 U.S.C. § 101

Patentable subject matter extends to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at  2354 . The Supreme Court also has held that claims are not patent-eligible if their elements, separate from the abstract idea or law of nature, are merely "well understood, routine, conventional activity already engaged in by" others in the relevant field.  *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 132 S. Ct. 1289, 1298 (2012).

6

Determining whether a patent claim is directed to patent-ineligible subject matter involves two steps: First, the court determines "whether the claims at issue are directed to [a] patent-ineligible concept[]." *Alice*, 134 S. Ct. at 2355. The court "typically refer[s] to step one as the 'abstract idea' step." *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). In the "abstract idea" step, the court "***evaluate[s] 'the focus of the claimed advance over the prior art'*** to determine if the claim's 'character as a whole' is directed to excluded subject matter.'" *Id.* (*quoting Affinity Labs of Tex.*, *LLC v. DIRECTTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Second, if the claim contains such a patent-ineligible concept, the court evaluates whether the claim includes any meaningful limitations that amount to an "inventive concept, *i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice,* 134 S. Ct. at 2355. In the "inventive concept" step, the Court "***look[s] with more specificity at what the claim elements add***, in order to determine 'whether they identify an 'inventive concept' in the application of the ineligible subject matter to which the claim is directed.'" *Intell. Ventures I*, 850 F.3d at 1338 (*quoting Affinity Labs*, 838 F.3d at 1258). Courts consider "the elements of each claim both individually and as 'an ordered combination' in determining whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (citation omitted).

Transforming an abstract idea into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294. A patent must limit its reach to a particular, inventive application of the law or idea. *Id*. at 1290. In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological

environment.  *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 610-12 (2010) ("[L]imiting an abstract idea to one field of use or adding token post solution components…[does] not make the concept patentable"); *Mayo*, 132 S. Ct. at 1301 (same).  Moreover, "simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Id.* at 1300.

## V.    ARGUMENT

Each of the Asserted Claims is directed to patent-ineligible subject matter under 35 U.S.C. § 101.  As a whole, each claim is directed to the abstract idea of concealing one's identity using an alias or disguise until it is safe to reveal one's true self—and none of the claims recite any inventive implementation of that idea.

As shown in Appendix A (Section I), all Asserted Claims require the same core functionality:

1)  *Generating* a fake MAC address (or other fake device identifier) or *receiving* such an identifier from a server;
2)  *Transmitting* the fake identifier to an access point in a probe request;
3)  *Receiving* a response from the access point that includes information about the access point;
4)  *Determining* whether the access point is authenticated; and
5)  *Transmitting* a connection request to the access point that includes the device's authentic device identifier followed by subsequent exchanges between access point and end device resulting in connection.

And as discussed above, Secure admits that this functionality distills to a two-step "hybrid approach" for purportedly increasing Wi-Fi security that includes: (1) using "'fake' media access control addresses when transmitting a probe request to an access point" and then (2) transmitting an "authentic device identifier . . . as part of the connection request to the access point, but only after determining the access point is authenticated."  Ex. D at 1.

Secure's own characterization confirms that this two-step structure governs both the independent and dependent claims.  The dependent claims do not introduce additional functional

steps. Instead, they recite refinements to the same bi-model identity management process. For example, claim 2 of the '384 patent adds the limitation that the "fake MAC address" is distinct from the end device's "actual original MAC address." Ex. A at claim 2. And claim 3 of the '384 patent adds the limitation that the information sent as part of the probe request (i.e., the request where the "fake" device identifier is transmitted) be "insufficient to identify the end device," which fully aligns with the claimed approach of maintaining the device's secrecy (step 1) until conditions are safe enough for the device to reveal its true self (step 2). Ex. A at claim 3.

As explained below, the idea of protecting one's identity by first concealing it and later revealing it after it is determined conditions are safe to do so is a conventional human behavior—a mental process humans have been performing for millennia. The fact that Secure has gone one step further by implementing this abstract idea into an electronic device does not confer patent eligibility. Moreover, none of the Asserted Claims adds an "inventive concept" sufficient to transform the abstract idea into a patent-eligible application under *Alice* Step 2. Accordingly, summary judgment of ineligibility under Section 101 is warranted.

A.    *Alice* **Step One: The Asserted Claims are Directed to an Abstract Idea**

As discussed above, each Asserted Claim as a whole is directed to the abstract idea of concealing one's identity using a pseudonym when there is a privacy risk, and revealing one's true identity when it is safe to do so. This is nothing more than a conventional mental process that "can be performed in the human mind," which is not patent-eligible. *See CyberSource Corp.*, 654 F.3d at 1372 ; *see also Content Extraction & Transmission*, 776 F.3d at 1347 (claims are ineligible where "humans have always performed . . . [the recited] functions").

That the Asserted Patents have sought to automate such mental processes in a digital system does not move the Asserted Claims into eligibility. *See Bancorp Servs. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1277-78 (Fed. Cir. 2012). This remains true even where

9

the claim steps involve computer-executed functions that humans cannot mentally perform (e.g., generating a fake MAC address for an end device, transmitting information via probe request, etc.). *Compression Techs. Sols. LLC v. EMC Corp.*, No. 12-dv-01746, 2013 WL 2368039, at *5 (N.D. Cal. May 29, 2013) (finding claims ineligible for reciting a mental process and rejecting argument that "if digital data is required, the human mind cannot utilize or comprehend it"); *Presqriber, LLC v. Amazing Charts, LLC*, No. 6:14-cv-461, 2014 WL 12622323, at *2 (E.D. TX. 2014) (citing the same). Indeed, it is well-settled law that claims cannot avoid abstraction simply by invoking computers merely as tools to mimic "human activity." *Alice*, 134 S. Ct. at 2355; *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (finding ineligible computer-implemented system for "using advertising as a currency [on] the Internet"); *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351, 1355 (Fed. Cir. 2014) (finding ineligible computer-implemented system for guaranteeing performance of an online transaction); *CyberSource Corp.*, 654 F.3d at 1370 (finding ineligible computer-implemented system for "verifying the validity of a credit card transaction over the Internet"); *Smartflash LLC v. Apple, Inc.*, 680 F.App'x 977, 982 (Fed. Cir. 2017) (finding ineligible computer-implemented system for "conditioning and controlling access to data based on payment"). Thus, the abstract nature of the Asserted Claims is not cured by implementing the abstract idea into a digital device that supplants the conventionally human acts with generic computing and network equipment like processors, transmitters, and receivers.

Secure's contention—advanced through its expert, Dr. Akl—that Samsung "grossly oversimplifies the scope" of the Asserted Claims is of no moment. *See, e.g.*, Ex. H ¶ 435. Dr. Akl's opinion fails to remove the Asserted Claims from the realm of abstraction for two reasons. First, Secure is bound by its own IPR statements characterizing the scope of the Asserted Claims.

10

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (public entitled to rely on patent owner's binding statements made during IPR). Secure's attempt to make an about-face from its position in IPR—via its expert who contends that the claims are directed to more than this "hybrid approach"—should be rejected. But second, even taking into account all of the additional limitations of the Asserted Claims—including for example that the claims require "probe requests," "probe responses," access points that are "authenticated" and, in some cases," the use of a "server"—does not render the Asserted Claims, as a whole, any less abstract.

Indeed, the fact that that two-step process has multiple sub-processes and steps of sending and then receiving messages and other information so that the device can determine when to reveal its true self does not change the nature of the claims, just like any conventional human act that involves multiple mental steps to analyze information and make a decision based on that analysis fails to make that human act any less conventional. Moreover, the fact that the claims require communication to occur through things like "probe requests" and "probe responses" fails to negate the abstractness of the claims. Using technological tools to "mimic human activity" (e.g., communicating information) does not negate abstraction. *Alice*, 134 S. Ct. at 2355. And the fact that a speaker (*e.g.*, an end device) receives a message or information (*e.g.*, a "fake device identifier") from a third party (*e.g.*, a server) before relaying that information to yet another recipient (*e.g.*, the access point) is nothing more than the childhood game of "telephone."

Moreover, styling the abstract idea as one involving the task of **authentication** does not negate the abstract nature of the claims. Authentication—i.e., "verifying the identify" of something using "known, trusted, and verifiable information" is yet another task humans have long performed with nothing more than their minds or with pen and paper (especially via the type of authentication by **comparison** that Dr. Akl contends takes place in the Accused Products). A

11

security officer compares a name on a driver's license with a name on a list before permitting entry to an office building. A hostess compares a name given at a restaurant with a reservation list before seating a patron. A nurse compares a patient's verbally provided date of birth with information on a hospital band before administering medicine. A submarine captain compares a code provided in a transmission with a code stored in locked safe on the submarine before complying with an order provided in the transmission. Authentication is a conventional human act involving collecting and analyzing information, and then making a determination based on such analysis—exactly what the Federal Circuit has repeatedly held to be abstract. *See, e.g.*, *Alice*, 134 S. Ct. at 2355 (claims directed to abstract idea of "collecting data, analyzing it, and determining the results based on the analysis of data"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting and analyzing information is abstract); *In re Gale*, 856 F.App'x 887, 889 (Fed. Cir. May 18, 2021) (claims directed to abstract idea of receiving information, analyzing that information, and then determining whether the information complies with a predetermined usage pattern); *Bozeman Fin. LLC v. Fed. Res. Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020) (claims directed to abstract idea of collecting and analyzing information, and then determining presence of fraud or errors based on such analysis); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (claims directed to abstract idea of collecting and analyzing information, and then making a determination as to whether fraud is present in a computing environment).

As such, the Asserted Claims fail to "identify any steps beyond those which [users] routinely and consciously perform. . . . ***[E]very step is a familiar part of the conscious process that [humans] can and do perform in their heads***," including using and communicating a fake identifier to conceal identity, determining when conditions exist such that one's true identity can

12

be revealed, and then revealing one's true identity. *SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F.App'x 950, 955 (Fed. Cir. 2014). And importantly, nothing in the intrinsic evidence states that these functions require any nonconventional computer or networking components. Ex A. at 9:19-27; Ex. B at 9:8-16; Ex. C at 9:4-12. The absence of this disclosure is dispositive. As the Federal Circuit has held, claims are patent ineligible where the "claims at issue do not require any nonconventional computer [or] network . . . components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed . . . functions 'on a set of generic computer components' . . . ." *Elec. Power*, 830 F.3d at 1352. Like the claims in *Electric Power*, the Asserted Claims of the cannot be patent eligible.

Accordingly, because the Asserted Claims, as a whole, are directed to an abstract idea, summary judgment of ineligibility should therefore be granted on *Alice* Step 1.

**B.   *Alice* Step Two: The Asserted Claims do not Convert a Patent-Ineligible Abstract Idea into a Patent-Eligible Invention**

There is no material factual dispute that the Asserted Claims do not recite any "additional features" that constitute an "inventive concept"—*i.e.*, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 134 S. Ct. at 2355. None of the claim limitations, considered alone or in combination, add "something more" to "transform" the abstract idea of concealing an identity when a security risk is present and then later revealing the true identify when that risk is no longer present into a "patent-eligible" application of that idea. *Id.*

To start, any attempt by Secure to frame the inquiry as whether the claims are directed to some novel application of technology or include a novel grouping of method steps is legally irrelevant. The fact that the Patent Office allowed the Asserted Patents to issue even after

13

considering issues of novelty does not mean that the Asserted Claims are directed to an "inventive concept." *SAP Am.*, 898 F.3d at 1163 (noting that novel and nonobvious patents may still be found abstract; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."); *Affinity Labs*, 838 F.3d at 1263 (Fed. Cir. 2016) (holding that "even assuming" that a particular claimed feature was novel does not "avoid the problem of abstractness"); *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 577 (2013) (noting that even a "groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a new abstract idea is still an abstract idea.").

Moreover, the Asserted Claims include no inventive concept because it is undisputed that they require no novel or specialized hardware. The core functionality—generating, transmitting, authenticating, receiving, etc.—is implemented entirely through, and requires nothing more than, well-understood, routine, and conventional equipment. *See Mayo*, 132 S. Ct. at 1298; *Alice*, 134 S. Ct. at 2355 (merely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not "transform the nature of the claim into a patent-eligible application"); *buySafe*, 765 F.3d at 1354 ("[A] claim directed to an abstract idea does not move into section 101 eligibility by merely requir[ing] generic computer implementation."); *see also Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d. 1306, 1327 (Fed. Cir. 2015) ("The presence of a general purpose computer to facilitate operations through uninventive steps does not change the fundamental character of an invention."). The specification confirms this, repeatedly disclosing that the claimed functionality can be performed using existing computing and networking infrastructure without modification. *See* Appendix B. And nothing in the intrinsic evidence

14

suggests that Secure invented or even sought to invent any technical componentry to implement the asserted functionality.

Even the claim element that arguably is central to Secure's alleged invention—"determining that the access point is an authenticated access point"—can be performed without any unique algorithm, protocol, or security mechanism. Indeed, Secure's expert, Dr. Akl, contends that this limitation is satisfied when an Accused Product receives information from an access point (SSID and encryption-type) and compares it to the same information on an internally-generated list. Ex. E ¶¶ 67-68, 127. But, as discussed above, this is a task that "mimics human activity," which the claims merely implement into a general-purpose computing device. This is not an inventive concept. *Alice*, 134 S. Ct. at 2355; *see also Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1355 (Fed. Cir. 2021) (no inventive concept where patents referenced "well-known and conventional ways to perform authentication").

Simply put, there is no dispute that the Asserted Claims require only well-understood, routine, and conventional computing and networking equipment to perform the claimed operations, which themselves are well-understood, routine, and conventional. Dr. Akl does not opine otherwise. Importantly, nowhere in his expert reports does Dr. Akl opine that the claims require nonconventional hardware or require a novel arrangement of components. Nor could he as the intrinsic evidence forecloses such an opinion. Instead, Dr. Akl asserts that the claims present a "specific improvement" to wireless technology. *See* Ex. H ¶¶ 447, 449. But that position fails as a matter of law. Even if the Court were to accept Secure's position that the Asserted Claims do not purport to cover the entirety of the abstract idea of concealing and then revealing identity, the "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358; *Bilski*, 561 U.S.

15

at 610-11 (same); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way").

In any event, Dr. Akl's mere labeling of claims as containing "specific improvements" is not legally sufficient. Courts have repeatedly held that characterizing claims as improving technology does not satisfy *Alice* Step 2 where, as here, the claims simply use computing components as tools to execute abstract ideas. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (no inventive concept where claims require "generic computers to perform generic computer functions"); *Impact Engine, Inc. v. Google LLC*, 2024 WL 3287126, at *7 (Fed. Cir. July 3, 2024) (claims directed to use of "generic computer-related components . . . as tools in a routine and conventional sense to practice the . . . abstract information-processing idea" do not show inventive concept); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358-59 (Fed. Cir. 2023) ("Simply stated, '[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.'"). Thus, as in *Electric Power*, the "focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power*, 830 F.3d at 1354. Accordingly, even accepting as true Secure's characterization of the Asserted Claims as being directed to a "specific improvement," there can be no material dispute that these improvements do not amount to an inventive concept under *Alice* Step 2.

The asserted dependent claims fare no better; they too provide no inventive concept. Narrowing the abstract ideas of the independent claims to, for example, Wi-Fi (Ex. A at claims 7, and 18; Ex. C at claims 3 and 17), using a ***fake*** (MAC address) that is distinct from the ***real*** identifier (actual original MAC address) (Ex. A at claim 2), ensuring that the fake identifier cannot

16

identify the end device Ex. A at claims 3, 10, and 24), and using a certain type of fake identifier (one created using random characters) (Ex. A at claims 4, 11, 19; Ex. B at claim 22; Ex. C at claim 4) does not transform the nature of the claims. These functions—and the structures required to perform these functions—are well understood, routine, and conventional and can be implemented using nothing more than conventional techniques and off-the-shelf components as the intrinsic evidence confirms. *See* Appendix B. "[F]urther narrowing of what are still" abstract ideas do not create eligibility. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018).

Accordingly, none of the Asserted Claims—independent or dependent—recites an inventive concept under *Alice* Step 2. And there is no material dispute of fact that the claims include no such inventive concept. Summary judgment of ineligibility should therefore be granted on *Alice* Step 2.

## VI.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant this Motion for Summary Judgment of Ineligibility Under 35 U.S.C. § 101 and find that the Asserted Claims are directed to patent-ineligible subject matter.

Date: July 28, 2025

/s/ R. Paul Zeineddin
R. Paul Zeineddin
Paul.Zeineddin@BlankRome.com
D.C. Bar No. 474734 (Admitted E.D. Tex.)
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
(202) 470-2781

-and-

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 S Washington Avenue
Marshall, TX 75670
Tel.: (903) 934-8450
Fax: (903) 934-9527

Joshua S. Reisberg
Josh.Reisberg@BlankRome.com
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000

Michael F. Reeder
State Bar No. 24070481
michael.reeder@blankrome.com
**BLANK ROME LLP**
717 Texas Avenue Suite 1400
Houston, TX 77002
(713) 815-3318

Sean D. Damon
D.C. Bar No. 1014471 (Admitted E.D. Tex.)
Sean.Damon@blankrome.com
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on July 28, 2025, via electronic mail.

*/s/ Melissa R. Smith*
Melissa R. Smith