# EXHIBIT H

## Joint Proposed Final Jury Instructions

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION



| | | |
|---|---|---|
| SECURE WI-FI LLC, | § | Case No. 2:24-cv-0047-JRG |
| | § | |
| Plaintiff, | § | |
| | § | Jury Trial Demanded |
| vs. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. and | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## JOINT [PROPOSED] FINAL JURY INSTRUCTIONS[1][2]

---

[1] Except as noted otherwise, these Final Jury Instructions are adapted from *Finesse Wireless LLC v. AT&T Mobility, LLC et. al*., No. 2:21-cv-316-JRG, Dkt. 286 (E.D. Tex. Jan. 13, 2023); *Solas OLED Ltd. v. Samsung Display Co. Ltd., et al.,* No. 2-19-cv-152-JRG, Dkt. 354 (E.D. Tex. March 8, 2021); *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al*., No. 2:22-cv-078-JRG, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Ollnova Technologies Limited v. eccobee, Inc*., No. 2:22-cv-072-JRG, Dkt. 279 (E.D. Tex. Oct. 5, 2023); and *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-033-JRG, Final Jury Instructions, Dkt. 294 (E.D. Tex. Nov. 17, 2023).

[2] Submissions agreed to by both Secure Wi-Fi and Samsung are not highlighted. Submissions proposed by Secure Wi-Fi that are not agreed to by Samsung are bracketed and ==highlighted in yellow==. Submissions proposed by Samsung that are not agreed to by Secure Wi-Fi are bracketed and ==highlighted in green==. The parties' respective positions with respect to the disputed instructions are included in the footnotes following the bracketed and highlighted text.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   CONSIDERING THE EVIDENCE ..................................................................... 2

      A.  CREDIBILITY OF WITNESSES ............................................................. 2

      B.  OBJECTIONS OF COUNSEL .................................................................. 3

      C.  HOW TO EXAMINE EVIDENCE ........................................................... 4

      D.  DEMONSTRATIVES ............................................................................... 6

      E.  BURDENS OF PROOF ............................................................................. 7

      F.   SUMMARY OF PARTIES' CONTENTIONS ......................................... 8

III.  CLAIMS AND CLAIM CONSTRUCTION .......................................................11

      A.  THE ROLE OF THE CLAIMS OF A PATENT ......................................11

      B.  HOW A CLAIM DEFINES WHAT IT COVERS .................................. 13

      C.  INDEPENDENT AND DEPENDENT CLAIMS ..................................... 14

IV.   INFRINGEMENT ............................................................................................. 15

      A.  DIRECT INFRINGEMENT .................................................................... 15

      B.  INDIRECT IFNRINGEMENT ................................................................ 17

      C.  WILLFUL INFRINGEMENT ................................................................. 18

V.    ELIGIBILITY .................................................................................................... 19

VI.   INVALIDIITY .................................................................................................... 21

      A.  PRIOR ART ............................................................................................. 22

      B.  OBVIOUSNESS ...................................................................................... 23

      C.  WRITTEN DESCRIPTION ..................................................................... 26

VII.  PATENT DAMAGES ........................................................................................ 27

      A.  INTRODUCTION .................................................................................... 27

      B.  BURDEN OF PROOF ............................................................................. 28

      C.  REASONABLE ROYALTY ................................................................... 29

      D.  APPORTIONMENT ................................................................................ 30

      E.  REASONABLE ROYALTY – RELEVANT FACTORS ......................... 31

VIII. AFTER ATTORNEYS PRESENT CLOSING ARGUMENTS ......................... 34

## I.      INTRODUCTION

Ladies and Gentlemen of the Jury: You have now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these for your review when you retire to the jury room to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make during these instructions as an indication that I have any opinion about the facts in this case. You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson, which you will select, fill in the blanks in that verdict form reflecting your unanimous agreement as to your verdict, you'll have your foreperson fill in the blanks in the verdict form reflecting your unanimous answers to those questions.  Then your foreperson will sign it, date it, and advise the Court Security Officer that you've reached a verdict. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

## II.    CONSIDERING THE EVIDENCE

### A.    CREDIBILITY OF WITNESSES

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them or presented them, you may consider the stipulation of the parties, and you may consider all the exhibits received and admitted into evidence, regardless of who may have presented or introduced them.

Some of the testimony you heard was translated from another language. In consideration of a witness's testimony, it is not relevant whether their testimony was in English or translated from another language into English.

You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case. In deciding this case, ladies and gentleman, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, all considered in the light of the circumstances.

Ask yourselves things like, has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You, ladies and gentleman, must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth intentionally. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

### B.    OBJECTIONS OF COUNSEL

As I have told you previously, the attorneys in this case are advocates for their competing clients and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may not draw any inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer the question.

If on the other hand the objection was overruled, then you should treat the question and answer just as you would treat any other question and answer as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not in so doing indicate any opinion as to the weight or effect of such evidence.  Again, that is your responsibility.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing, either by talking to them here at the bench or by calling a recess and talking to them while you were out of the courtroom. This happens because there are things that arise in trials that do not involve the jury. You should not speculate, ladies and gentleman, or try to guess what was said during any discussions the Court had with counsel that took place outside of your presence.

## C.    HOW TO EXAMINE EVIDENCE

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, please understand that the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on all the evidence presented, both direct and circumstantial.

Now, in this case, the parties may have stipulated or agreed to some facts in the case. And when the lawyers for both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the facts as proven.  These facts are not disputed between the parties.

The parties have, in fact, stipulated to the following facts and I'll go through them now.

1.      Plaintiff Secure Wi-Fi is a Texas limited liability company with its principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2.      Secure Wi-Fi is the sole owner by assignment of all rights, title and interest in the Asserted Patent.

3.      Defendant Samsung Electronics Co. Ltd. is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business located at 129 Samsung-ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do, 443-742, Republic of Korea.

4.      Defendant Samsung Electronics America, Inc. is a wholly owned subsidiary of Samsung Electronics Co. Ltd. and is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660 and offices and other facilities in this District at least at 6625 Excellence Way, Plano Texas and 1301 E. Lookout Drive, Richardson, Texas 75082.

5.      Secure Wi-Fi filed a complaint in this case against Samsung on January 25, 2024.

6.      The Asserted Patent is U.S. Patent No. 10,694,384.

7.      The '384 patent, titled "Schemes for Connecting to Wireless Network" was filed on March 30, 2018 and issued on June 30, 2020. It lists Hyoung-Gon Lee as the inventor.

8.      The date of the hypothetical negotiation is June 23, 2020.

Now, certain testimony in this case has been presented to you through what we call depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Generally speaking, if a witness cannot be present to testify in person, that witness's testimony may be presented under oath in the form of a deposition.

Now, before the trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded the sworn testimony. Deposition testimony is entitled to the same consideration by you as testimony given by a witness who appears in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of deposition testimony to the best of your ability, just as if the witness had testified before you in person in open court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the evidence in the case. However, you should not base your decision on any evidence not presented by the parties during the trial, including your own personal experiences with any of the products that may be at issue in this case.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

Also, when knowledge of a technical subject may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinions on those technical matters to the jury. However, you are not required to accept any expert witness' opinions. As with any other witness, it is solely up to you to decide whether to accept or rely upon the testimony presented by a witness.

### D.    DEMONSTRATIVES

Certain exhibits have been shown to you during the trial that were simply illustrations. We call these types of exhibits "demonstrative exhibits" or just "demonstratives" for short. Demonstrative exhibits are a party's depiction, picture, or model to describe something involved in this trial. Many times these demonstratives were shown to you as slides on the monitors that are before you.

If your recollection of the evidence differs from the demonstratives that you've been shown, then you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aids."  And while demonstrative exhibits are not themselves evidence, a witness's testimony concerning a demonstrative is evidence.

Although demonstrative exhibits may be helpful in determining the issues, they will not be available for you to view during your deliberations.

### E.    BURDENS OF PROOF

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The plaintiff, Secure Wi-Fi, LLC, who has been referred to as Plaintiff or Secure Wi-Fi, has the burden of proving patent infringement by a preponderance of the evidence. Secure Wi-Fi also has the burden of proving willful patent infringement by a preponderance of the evidence. Secure Wi-Fi also has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Now, the defendants in this case, which are Samsung Electronics Co., Ltd Corporation and Samsung Electronics America, Inc, which you've heard referred to jointly or collectively throughout the trial simply as the Defendants or as Samsung, have the burden of proving the ineligibility and invalidity of Secure Wi-Fi's patent claims by clear and convincing evidence. Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Now, these two burdens of proof are not to be confused with a third and separate burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case, not in a civil case such as this. You should not confuse preponderance of the evidence or clear and convincing evidence with evidence beyond a reasonable doubt. Beyond a reasonable doubt is a higher standard or degree than both the preponderance of the evidence and clear and convincing evidence standards.

### F.    SUMMARY OF PARTIES' CONTENTIONS

[Secure Wi-Fi's proposal:[3]  As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this is an action for patent infringement. Secure Wi-Fi contends that Samsung infringes certain claims of Secure Wi-Fi's's asserted patent.  Remember, there is one United States patent asserted in this case.  It is U.S. Patent No. 10,694,384, which you have heard referred to throughout the trial and I'll refer to in these instructions as the '384 patent, or the "patent-in-suit" or the "asserted patent."

Secure Wi-Fi, the Plaintiff, contends that Samsung infringes the following claims of the '384 patent: Claims 1, 3-4, 7-13, 17-20, 22, and 24.  These claims are referred to as "Secure Wi-Fi's asserted claims" or, simply, the "asserted claims."

Secure Wi-Fi alleges that Samsung directly infringes each of Secure Wi-Fi's asserted claims by making, using, selling, or offering for sale within the United States or importing into the United States certain smartphones and tablets running Google's Android® OS version 10 or higher and certain smartwatches running Google's Wear® OS version 3 or higher.  These products are referred to as the "accused products."

Secure Wi-Fi also contends that Samsung indirectly infringes the asserted claims by having actively induced its customers to infringe the asserted claims of the '384 patent. Secure Wi-Fi also alleges that Defendants' alleged infringement is and has been willful. Secure Wi-Fi seeks a royalty for Defendants' alleged infringement, which must be reasonable.

Samsung denies that it infringes the '384 patent, directly or indirectly or that any alleged infringement is or has been willful.

Separately, Samsung also contends that all of the asserted claims of the '384 patent are ineligible for patent protection and are invalid.  Ineligibility and invalidity are defenses to infringement.  Samsung contends that the asserted claims are (1) not entitled to patent protection because they are directed to an abstract idea and contain no inventive concept; (2) rendered obvious by prior art that existed before Secure Wi-Fi's alleged invention; and (3) are not adequately described in the specification of the '384 patent—meaning that the asserted claims lack written description support.  Secure Wi-Fi denies that any of its asserted claims are patent-ineligible or invalid.

Ineligibility, invalidity, and infringement, ladies and gentlemen, are separate and distinct issues that must be separately decided by you, the jury.  Your job is to decide whether Secure Wi-Fi's asserted claims of the '384 patent have been infringed and whether any of the asserted claims are ineligible or invalid.  If you decide that any claim of the patent has been infringed, but is not ineligible for patent protection or is not invalid, you will then need to decide the amount of

---

[3] **Authority:**  Adapted from *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al.*, No. 2:22-cv-078-JRG, Dkt. 592 at 49-52.

money damages to be awarded to Secure Wi-Fi as compensation for infringement.  Samsung denies that it owes Secure Wi-Fi any damages.]

[Samsung's proposal:[4]  As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this is an action for patent infringement. Secure Wi-Fi contends that Samsung infringes certain claims of Secure Wi-Fi's asserted patent.  Remember, there is one United States patent asserted in this case.  It is U.S. Patent No. 10,694,384, which you have heard referred to throughout the trial and I'll refer to in these instructions as the '384 patent, or the "patent-in-suit" or the "asserted patent."

Secure Wi-Fi, the Plaintiff, contends that Samsung infringes the following claims of the '384 patent: Claims 1, 3-4, 7-13, 17-20, 22, and 24.  These claims are referred to as "Secure Wi-Fi's asserted claims" or, simply, the "asserted claims."  Of these asserted claims of the '384 patent, some are directed to method claims and some are directed to product claims.  Claims 1, 3-4, and 7-13 are method claims while claims 17-20, 22, and 24 are product claims.[5]

Secure Wi-Fi alleges that Samsung directly infringes each of Secure Wi-Fi's asserted claims.  Secure Wi-Fi contends that Samsung infringes the '384 patent by selling products that Secure Wi-Fi alleges practice Secure Wi-Fi's asserted claims.  These products include certain smartphones and tablets running Google's Android® OS version 10 or higher and certain smartwatches running Google's Wear® OS version 3 or higher.  These products are referred to as the "accused products."

Secure Wi-Fi contends that Samsung directly infringes the '384 patent by making, using, selling, or offering for sale within the United States or importing into the United States, accused products that literally perform each and every step required by the asserted method claims or that literally satisfy each limitation required by the asserted product claims.  Secure Wi-Fi also contends that Samsung indirectly infringes the asserted claims by having actively induced its customers to infringe the asserted claims of the '384 patent. Secure Wi-Fi also alleges that

---

[4] **Authority:** Adapted from *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-033-JRG, Final Jury Instructions, Dkt. 294 at 28-30 (E.D. Tex. Nov. 17, 2023).

[5] Secure Wi-Fi objects to this instruction as unnecessary and confusing. Moreover, Secure Wi-Fi objects to any presentation of Samsung's alleged divided infringement defense to the jury because of (1) Samsung's failure to disclose this defense in response to Interrogatory No. 3 or otherwise during fact discovery, (2) Samsung's failure to disclose this defense in its expert reports, (3) as violative of the Court's MIL No. 17 and (4) waiver because any argument that the method claims should be construed to add a limitation requiring an access point to affirmatively perform authentication was never advanced during claim construction.  Samsung disagrees. Samsung maintains that this defense is permissible specifically in view of opinions presented by Secure Wi-Fi's expert, Dr. Akl, for the first time in expert discovery.  To the extent Dr. Akl presents such opinions at trial, such opinions cannot satisfy Secure's burden on infringement as a matter of law, which Samsung addresses in its motion for summary judgment of non-infringement, Dkt. No. 91 at 28-29.

Defendants' alleged infringement is and has been willful. Secure Wi-Fi seeks a royalty for Defendants' alleged infringement, which must be reasonable.

Samsung denies that it infringes the '384 patent, directly or indirectly or that any alleged infringement is or has been willful. .

Separately, Samsung also contends that all of the asserted claims of the '384 patent are ineligible for patent protection and are invalid. Ineligibility and invalidity are defenses to infringement. Samsung contends that the asserted claims are (1) not entitled to patent protection because they are directed to an abstract idea and contain no inventive concept; (2) rendered obvious by prior art that existed before Secure Wi-Fi's alleged invention; and (3) are not adequately described in the specification of the '384 patent—meaning that the asserted claims lack written description support. Secure Wi-Fi denies that any of its asserted claims are patent-ineligible or invalid.

Ineligibility, invalidity, and infringement, ladies and gentlemen, are separate and distinct issues that must be separately decided by you, the jury. Your job is to decide whether Secure Wi-Fi's asserted claims of the '384 patent have been infringed and whether any of the asserted claims are ineligible or invalid. If you decide that any claim of the patent has been infringed, but is not ineligible for patent protection or is invalid, you will then need to decide the amount of money damages to be awarded to Secure Wi-Fi as compensation for infringement. Samsung contends that Secure Wi-Fi is not entitled to any damages.

Now, ineligibility and invalidity are defenses to infringement. Ineligibility, invalidity and infringement, however, are separate and distinct issues that must be separately decided by you, the jury.

Your job is to decide whether the Secure Wi-Fi's asserted claims of the '384 patent have been infringed, whether that infringement was willful, and whether any of the asserted claims are ineligible or invalid. If you decided that any claim of the '384 patent has been infringed, and is not ineligible and not invalid, you will then need to decide the amount of money damages to be awarded to Secure Wi-Fi as compensation for infringement. Samsung denies that it owes Secure Wi-Fi any damages.]

### III.    CLAIMS AND CLAIM CONSTRUCTION

#### A.    THE ROLE OF THE CLAIMS OF A PATENT

Now, before you can decide many of the issues in this case, you will need to understand the role of the patent claims. The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims themselves that define what the patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention, and they provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have already determined the meaning of certain claim terms in this case and provided you with my definitions of those terms in your juror notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions I have supplied, they're sometimes called constructions, and apply them to the issues that you are asked to decide, including the issues of infringement, invalidity, and ineligibility.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. Again, these are in your juror notebooks.

For claim elements or limitations that I have not construed–that is, elements or limitations for which I have not interpreted or defined–you are to use and apply the plain and ordinary meaning of that language from the claim as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding infringement, invalidity, and ineligibility. And as I have already mentioned, you have a complete copy of the '384 patent in your juror notebooks, and each of the asserted claims is set forth in that patent, and you may refer to the patent and the Court's definitions or constructions in your juror notebooks during your deliberations.

Several times in my instructions I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art. In deciding the level of ordinary skill in the field, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Now, the claims are intended to define in words the boundaries of the inventor's rights. Only the claims of a patent can be infringed. Neither the written description nor the figures or drawings or any other portion of the patent can be infringed. And each of the claims must be considered individually.

### B.    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product satisfies each of these requirements, then it is covered by and infringes the claim. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by that claim. If the product is not covered by the claim, that claim is not infringed.

Now, the beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble of the claim means "including but not limited to" or "containing but not limited to." When the word "comprising" is used in a preamble, if you decide that an accused product includes all the limitations or elements of the claim, the claim is infringed, even if that product contains additional features or elements. For example, a claim to table comprising a tabletop, legs and glue would be infringed by a table that includes a tabletop, legs and glue even if that table also and additionally contains other features or structures, such as leaves to expand the size of the tabletop or wheels to go on the end of the legs.

### C.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims. In this case, ladies and gentlemen, claims 1, 9, and 17 of the '384 patent are independent patent claims. Claims 3-4, 7, 8, 10-13, 18-20, 22, and 24 are dependent patent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. An independent claim does not refer to any other claim in the patent. Thus, it is not necessary to look at any other claim within the patent to determine what an independent claim covers.

On the other hand, a dependent claim does not by itself recite all of the requirements of the claim, but refers to another claim for some of its requirements. In this way, a dependent claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim or claims to which it refers, and then adds its own additional requirements. So, to determine what a dependent claim covers, it is necessary to look at both the dependent claim itself and any other claim or claims to which it refers or from which it depends. A product that meets all of the requirements of both the dependent claim itself and the claim or claims to which it refers is covered by that dependent claim.

## IV.    INFRINGEMENT

### A.    DIRECT INFRINGEMENT

If a person or company makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or company is said to directly infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent may be infringed. You must compare the asserted patent claims as I have interpreted or construed them for you to the accused products and determine whether or not there is infringement. This is the only correct comparison.

You should not compare the accused products with any specific examples set out in the patent or with prior art in reaching your decision on infringement. In deciding infringement, again, the only correct comparison is between the accused products and the limitations of the claims as the Court has construed or interpreted them.

And you must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both sides during the course of the trial.

I'll now instruct you about the specific rules you must follow to determine whether Secure Wi-Fi has proven that Samsung has directly infringed one or more of the patent claims involved in this case.

A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringement of a claim. A patent may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not infringement of the patent. Infringement does not require proof that a party copied its product from the asserted claims.

You must decide separately for each asserted claim whether or not there was infringement. However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.

But, on the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirements of any claim that depends from that independent claim—that is, whether those dependent claims have also been infringed. Again, a dependent claim includes all the requirements of any of the claims to which it refers, plus its own additional requirements.

In order to prove direct infringement of a patent claim, Secure Wi-Fi, the plaintiff, must show by a preponderance of the evidence that the accused products include each and every limitation or element of a claim. In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the

15

requirements or limitations of that claim to determine whether the accused product contains each and every requirement or limitation recited in that claim.

A claim requirement is literally present if it exists in an accused product just as described in the claim language, either as I have explained or construed that language for you or, if I did not explain or construe it for you, as it would have been understood by its plain and ordinary meaning by a person of ordinary skill in the art. If an accused product omits any element recited in a claim, then you must find that the product in question does not literally infringe that claim.

So long as an accused product has each and every one of the claim elements, infringement of that claim is shown, even if the product contains additional features or elements not required by the claims.

[Samsung's Proposal: As I mentioned earlier, some of the asserted claims from the '384 patent that Secure Wi-Fi contends are infringed are method claims, and others are product claims. Secure Wi-Fi contends that Samsung literally infringes the following method claims:

- Claims 1, 3-4, and 7-13 of the '384 patent.

Secure Wi-Fi contends that Samsung literally infringes the following product claims:

- Claims 17-20, 22, and 24 of the '384 patent

In determining whether an accused product literally infringes a claim, you must compare the accused product with each requirement recited in the claim. A claim requirement is present if it exists in the accused product as I have explained the language of the requirement to you or, if I did not explain it, as it would have been understood by one of skill in the art.

For the Secure-Wi-fi asserted method claims, you must decide whether Samsung performed each step required by the asserted method claims. For the Secure Wi-Fi asserted product claims, you must decide whether Samsung has made, used, sold, or offered for sale, or imported, within the United States, an accused product covered by the asserted product claims.

Direct infringement of a method claim occurs only where all the steps of a claimed method are performed by a single party. An accused product directly infringes an a product claim—sometimes called an "apparatus" claim—if the accused product is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation.] [7]

---

[6] This instruction is necessary to inform the jury of what it must decide with respect to Secure Wi-Fi's actions. Samsung's proposal is consistent with this court's jury instructions in *Ultravision Techs., LLC v. GoVision, LLC*, No. 2:18-cv-00100-JRG, Final Jury Instructions, Dkt. 699 at 27:16-23 (E.D. Tex. June 11, 2021).

[7] Secure Wi-Fi objects to this instruction as unnecessary and confusing. Moreover, Secure Wi-Fi objects to any presentation of Samsung's alleged divided infringement defense to the jury because of (1) Samsung's failure to disclose this defense in response to Interrogatory No. 3 or otherwise during fact discovery, (2) Samsung's failure to disclose this defense in its expert

## B.   INDIRECT IFNRINGEMENT

I'll now instruct you, ladies and gentlemen, on indirect infringement.

In this case, Secure Wi-Fi has accused Samsung of indirect infringement by actively inducing its customers to directly infringe various claims of the '384 patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. Samsung is liable for induced infringement of a claim only if Secure Wi-Fi proves by a preponderance of the evidence that:

1.   Acts have been carried out by Samsung's customers that directly infringe that claim;

2.   Samsung has taken action intending to cause the infringing acts by its customers; and

3.   Samsung has been aware of the '384 patent and has known that the acts of its customers constitute infringement of the '384 patent or was willfully blind to that infringement.

To establish induced infringement, it is not sufficient that someone else directly infringes a claim. Nor is it sufficient that the company accused of inducing another's direct infringement merely had knowledge or notice of an asserted patent or have been aware of the acts by another that allegedly constitute direct infringement. And the mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Samsung specifically intended to cause another to infringe or was willfully blind to that infringement.

Willful blindness is established if Samsung believed there was a high probability that the acts, if taken, would constitute infringement of the asserted claims of '384 patent, but deliberately avoided confirming that belief.

---

reports, (3) as violative of the Court's MIL No. 17 and (4) waiver because any argument that the method claims should be construed to add a limitation requiring an access point to affirmatively perform authentication was never advanced during claim construction.  Samsung disagrees for the same reasons addressed above.  *See supra* n. 6.

### C.    WILLFUL INFRINGEMENT

Secure Wi-Fi also contends that Samsung has willfully infringed the asserted claims of the '384 patent. If you decide that Samsung has infringed a valid claim, you must also determine whether or not this infringement is willful. Secure Wi-Fi must prove willfulness by a preponderance of the evidence. You may not determine that the infringement was willful just because Samsung knew of the asserted patent and infringed it. However, you may find that Samsung willfully infringed if you find that Samsung deliberately or intentionally infringed the '384 patent.

You may find that Samsung's actions were willful if Samsung acted in reckless or callous disregard of, or with indifference to, the rights of Secure Wi-Fi.  A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.

To determine whether Samsung acted willfully, consider all the facts and assess Samsung's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not Samsung reasonably believed during the course of this lawsuit that they did not infringe or that the asserted patent was invalid.  You may find that Samsung's actions were deliberate or intentional if Samsung was willfully blind to Secure Wi-Fi's patent rights.

Your determination of willfulness as to the asserted patent should incorporate the totality of the circumstances based on the evidence presented during trial. Willfulness can be established by circumstantial evidence. Now, if you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later if you find it.

## V.    ELIGIBILITY

I will now instruct you about the rules to follow in deciding whether or not Samsung has proven by clear and convincing evidence that any of the asserted claims of the '384 patent are ineligible for patent protection.

To succeed on its claim for patent ineligibility, Samsung must establish two things. The first is whether the claims are directed to an abstract idea. This is an issue for the Court to decide, [Secure Wi-Fi's proposal: and I will make this determination after the trial is over. It is not something you will decide][8][Samsung's proposal: and I have already decided this issue in Samsung's favor—specifically that the asserted claims, as a whole, are directed to [the conventional human activity of hiding, and then revealing, your real identity]].[9][10]  The second thing that Samsung must establish that you, the jury, will decide is whether the asserted claims involve nothing more than the performance of activities which a person of ordinary skill in the art would have considered well-understood, routine, and conventional at the time the patent application was filed.

To reach this determination, you should consider all of the evidence presented during the trial, including the testimony of witnesses, as well as the exhibits introduced, including the specification of the '384 patent. If the evidence shows by clear and convincing evidence that the elements of the asserted claims, when taken individually and as an ordered combination involve only technology or activities that a person of ordinary skill in the art would have considered as well-understood, routine and convention, then this element of patent ineligibility has been established.

[Secure Wi-Fi proposal: To meet its burden on this issue, Samsung must show by clear and convincing evidence that the asserted claims of the '384 patent involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine and conventional as of the priority date. The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine and conventional.][11]  Rather, ladies and gentlemen, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim [Secure Wi-Fi's proposal: to involve only technology

---

[8] **Authority**: *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al*., No. 2:22-cv-078-JRG, Dkt. 592 at 66.

[9] To the extent the Court grants Samsung's motion for summary judgment of ineligibility under 35 U.S.C. § 101 (D.I. 83) with respect to *Alice* Step One, but not Step Two, then then "***the jury should be instructed what the abstract idea is . . . and that the abstract idea cannot contribute to the inventive concept.***"  *Optis Cellular Tech., LLC v. Apple Inc.*, No. 2022-1904, 2025 WL 1680253, at *11 n.11 (Fed. Cir. June 16, 2025) (emphasis added). The bracketed language should be replaced with a description of the abstract idea as found by the Court in reaching its decision granting summary judgment of ineligibility under *Alice* Step One.

[10] Secure Wi-Fi objects to the Court instructing the jury regarding what constitutes the abstract idea.

[11] **Authority:**  *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al*., No. 2:22-cv-078-JRG, Dkt. 592 at 66-67.  Samsung maintains that this additional language is unnecessarily duplicative of language in this instruction to which the parties already agree.

that was well-understood, routine and conventional as of its priority date][12] [Samsung's proposal: limitations other than the invention's use of the ineligible concept which I have already found the claims to be directed were well-understood, routine and conventional as of the priority date of the '384 patent, which is November 21, 2012].[13]

---

[12] **Authority:** *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al.*, No. 2:22-cv-078-JRG, Dkt. 592 at 67.

[13] **Authority:** *Optis Cellular Tech., LLC v. Apple Inc.*, No. 2022-1904, 2025 WL 1680253, at *11 n.11 (Fed. Cir. June 16, 2025) (*citing BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

## VI.    INVALIDIITY

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that any of the asserted claims of the '384 patent are invalid. Patent invalidity is a defense to patent infringement. As I already mentioned, invalidity is a separate and distinct issue from infringement and ineligibility, and must be separately decided by you, the jury.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

Now, in order to overcome this presumption, Samsung must establish by clear and convincing evidence that the claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis, and you must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity and ineligibility. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity and ineligibility. In making your determination as to invalidity, you should consider each claim separately.

## A.    PRIOR ART

A previous device, system, method, publication or patent that predates the claimed invention is generally called prior art or a prior art reference. Prior art may include things that were publicly known or have been used or offered for sale, or references such as publications or patents that disclose the claimed invention or elements of the claimed invention.

To be prior art, an item or reference must have been made, known, used, sold, offered for sale, published, patented, or described in a patent that was filed before the date of the invention or more than one year before the filing of the application to which the patent claims priority.

In evaluating prior art to determine whether an invalidity defense has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the PTO. You must decide what prior art would have disclosed or taught to one of ordinary skill in the field of the technology of the patent at the date of the invention. In order for someone to be entitled to a patent, the invention must actually be new and non-obvious. In general, inventions are new when the identical apparatus, system or method has not been made, used or disclosed before.  And inventions are non-obvious when they would not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.

B.    OBVIOUSNESS

Defendants contend that all of the asserted claims of the '384 patent are invalid as being obvious.  I'll now instruct you as to how to determine whether any asserted claim is invalid as being obvious.

Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.

Samsung has the burden of establishing obviousness by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

Now, in determining whether the claimed invention was obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention. A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art. The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from persons having ordinary skill in the art.

In considering whether a claimed invention was obvious, you must first determine the scope and content of the prior art.  The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention.  It also includes prior art from different fields that a person having ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, teachings, suggestions, and motivations may also be found within the knowledge of a person of ordinary skill in the art, including inferences and creative steps that a person of ordinary skill in the art would employ.  A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like the pieces of a puzzle.  The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

1.  whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, such as whether there was a design need or market pressure to solve a problem, and a finite number of identified, predictable solutions; and;

6. whether the change resulted more from design incentives or other market forces.

To find the invention obvious, you must find that the prior art provided a person having ordinary skill in the field a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

Now, in determining whether a claimed invention was obvious, consider each claim separately. Do not use hindsight. Consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the '384 patent.

In making these assessments, you should also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention or afterwards that may shed light on the obviousness or not of the claimed invention. The following are possible secondary considerations, but it's up to you to decide whether secondary considerations of non-obviousness exist at all.  These possibilities are as follows:

1. whether the invention was commercially successful, provided that there is a causal connection between the patented features of the invention and the commercial success, rather than the result of design needs or market pressure, advertising, or similar activities;

2. whether the invention satisfied a long-felt need in the art;

3. whether others were unsuccessful in making the invention;

4. whether others copied the invention;

5. whether there were changes or related technologies or market needs contemporaneous with the invention;

6. whether others sought or obtained rights to the patent from the patent holder;

7. whether the invention achieved unexpected results;

8. whether others in the field praised the invention;

9. whether the invention departed from other principles or accepted wisdom of the art.

These factors are relevant only if there is a connection or nexus between the factors and what differentiates the claimed invention from the prior art. Secure Wi-Fi, the plaintiff, has the burden of establishing the connection or nexus. Moreover, even if you conclude that some of the above indicators of objective evidence have been established, those factors should be considered along with all the other evidence in the case determining whether Samsung has proven that the claimed invention would have been obvious.

Now, in support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it. In making these determinations, a person of ordinary skill uses simple common sense and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ. Also, Samsung does not need to show that one of ordinary skill would actually have combined the physical structures of two references; one need only combine the teachings.

Remember, as I've stated earlier, the prior art is not limited to patents and published materials but includes general knowledge that would have been available to one of ordinary skill in the field of the invention. If you find that Samsung has proven obviousness by clear and convincing evidence, then you must find that claim is invalid.

## C.    WRITTEN DESCRIPTION

Samsung also contends that all asserted claims of the '384 patent are invalid for failure to satisfy the written-description requirement.  As I previously explained to you, to obtain a patent, one must first file an application with the USPTO, the United States Patent and Trademark Office.  The process of obtaining a patent is called patent prosecution.

And the specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's priority date.

To succeed on its claim of lack of adequate written description as to the '384 patent, Samsung must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the priority date of the patent would not have understood that the specification describes the full scope of the invention as it is claimed in the claims of that patent.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent-in-suit satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of the technology of the patent as of the filing date of the patent-in-suit.

The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the priority date would have understood that that element is necessarily present in what the specification discloses.

Now, the written description does not have to be in the exact words of the claim.  The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, et cetera, contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention.

However, a mere wish or plan for obtaining the claimed invention is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the scope and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  The issue of written description, ladies and gentlemen, is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

## VII.    PATENT DAMAGES

### A.    INTRODUCTION

If you find that Secure Wi-Fi has proven that Samsung has infringed any valid claim of the '384 patent, you must then consider what amount of damages, if any, to award Secure Wi-Fi. If you find that Samsung has not infringed any of the asserted claims or that all of the infringed claims are invalid, then Secure Wi-Fi is not entitled to any damages, and you will not consider damages at all.

I will now instruct you about the measure of damages, but by instructing you on damages, ladies and gentlemen, I am not suggesting which party should win this case on any issue.  If you find that Samsung has not infringed any valid claim of the '384 patent, then Secure Wi-Fi is not entitled to any patent damages.

Secure Wi-Fi has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Secure Wi-Fi establishes that it more likely than not suffered as a result of Samsung's infringement of the asserted claims. While Secure Wi-Fi is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Secure Wi-Fi is not entitled to damages that are remote or that are only speculative.

The damages you award must be adequate to compensate Secure Wi-Fi for any infringement you may find. You may not award Secure Wi-Fi more damages than are adequate to compensate it for the infringement. You also must not include any additional amount for the purpose of punishing Samsung or setting an example. The patent laws provide that the damages for infringement may not be less than a reasonable royalty.

## B.    BURDEN OF PROOF[14]

[Samsung's proposal: Where the parties dispute a matter concerning damages for infringement, it is the patent owner's burden to prove by a preponderance of the evidence that its version is correct.][15]

---

14 **Authority:** Adapted from Jury Charge in *EON Corp. IP Holdings, LLC v. Silver Spring Networks, Inc.*, No. 6:11-CV-317-JDL, Dkt. 620, at 19 (E.D. Tex. June 10, 2014), Instruction No. 23 ["Damages—Burden of Proof"]; *see also Ericsson Inc. v. D-Link Corp.*, No. 6:10-cv-473-LED- KFG, Dkt. 504, at 23 (E.D. Tex. June 13, 2013).

15 Secure Wi-Fi objects to this instruction as unnecessary, redundant and confusing. The burden of proof with respect to damages is adequately explained in the following Instructions: II. Considering the Evidence E. Burdens of Proof and VII. Patent Damages A. Introduction. Samsung disagrees.  To the extent Samsung presents an alternative measure of damages at trial (which it is not obligated to do), Samsung maintains the jury should be instructed specifically on how to consider disagreements regarding calculations of damages.

### C.    REASONABLE ROYALTY

Secure Wi-Fi seeks damages in the form of a reasonable royalty, which I'll now instruct you how to calculate. A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, offer for sale or import the claimed invention. A reasonable royalty is defined as the amount of royalty payment that Secure Wi-Fi and Samsung would have agreed to in a hypothetical negotiation taking place just prior to when you find that infringement first began.

Reasonable royalty awards can take the form of a lump-sum or a running royalty. If you find Secure Wi-Fi is entitled to damages, you must decide whether the parties would have agreed to a lump-sum or a running royalty at the time of the hypothetical negotiation. A lump sum is a one-time payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the patented product, both past and future. By contrast, a running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold.

In considering this hypothetical negotiation, you should focus on what the expectations of Secure Wi-Fi and Samsung would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be the royalty that would have resulted from this hypothetical negotiation and not simply the royalty that either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

29

**D.    APPORTIONMENT**

The law requires that any royalty awarded to Secure Wi-Fi correspond to the value of the patented invention within the accused products, as distinct from other unpatented features or other market factors. This is particularly true where the accused products have multiple features and multiple components not covered by the patent or where the accused products work in conjunction with other non-patented items. If unpatented features contribute to the accused products, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate that reflects the value attributable to the patented invention alone.

## E.    REASONABLE ROYALTY – RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the factors known and available to the parties at the time when the infringement first began.

Some of the kinds of factors that you may consider in making your determination are:

1. The royalties, if any, received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program, if any, to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, if any, such as whether or not they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items and the extent of such derivative or convoyed sales.

7. The duration of the patent-in-suit and the term of the license.

8. The established profitability of the product made under the patent, its commercial success, and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices that had been used for achieving similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent, if any, to which the licensee has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor, such as the patentee and the licensee, such as the infringer, would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement. That is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific*" factors during testimony. No one of these factors is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your minds would have increased or decreased the royalty that the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent businesspeople.

[Samsung's proposal: Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. If a license agreement is not sufficiently comparable, you may not rely on it in determining damages. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.][16][17]

[Secure Wi-Fi's Proposal: Now in determining a reasonable royalty, you may also consider evidence concerning the availability, or lack thereof, of acceptable non-infringing substitutes or alternatives to the patented invention. To be an acceptable non-infringing substitute, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the

---

[16] **Authority:** *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017); *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23-cv-00059-JRG-RSP, Final Jury Instructions at 28; *Atlas Global Techs. LLC v. TP-Link Techs. Co., Ltd.*, No. 2:21-cv-00430-JRG-RSP, Final Jury Instructions at 17.
[17] Secure Wi-Fi objects to this instruction as unnecessary and redundant of *Georgia-Pacific* Factor No. 2. Samsung disagrees. As Secure Wi-Fi directly disputes the comparability of the licenses on which Samsung relies, it is essential that the jury be instructed on what it means for a license to be comparable. The meaning of comparability is not addressed above in the proposed instructions relating the *Georgia-Pacific* factors.

utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.  The party asserting that there is a non-infringing alternative, here Samsung, has the burden to show by a preponderance of the evidence that a proposed non-infringing alternative was available at the time of the hypothetical negotiation and during the damages period. You should not consider for damages purposes any alternatives that Samsung has not shown were available at the time of the hypothetical negotiation.][18]

[Samsung's proposal: In determining a reasonable royalty, you may also consider whether Samsung had commercially acceptable non-infringing alternatives to taking a license from Secure Wi-Fi that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.  A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims. You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over old modes or devices, if any, that had been used to achieve similar results.][19]

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

With those instructions, we are ready to hear closing arguments from the attorneys in this case.

---

[18] **Authority**: *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al*., No. 2:22-cv-078-JRG, Dkt. 592 at 87-88; *Solas OLED Ltd. v. Samsung Display Co. Ltd., et al.,* No. 2-19-cv-152-JRG, Dkt. 354 at 900; *Finesse Wireless LLC v. AT&T Mobility, LLC et. al*., No. 2:21-cv-316-JRG, Dkt. 286 at 40.

[19] **Authority**: *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-033-JRG, Final Jury Instructions, Dkt. 294 at 59:9-17 (E.D. Tex. Nov. 17, 2023); *G+ Communications, LLC. vs. Samsung Electronics, Co. Ltd. et. al*., No. 2:22-cv-078-JRG, Final Jury Instructions, Dkt. 592 at 87-88 & 87:14-19 (instruction regarding comparing patented invention to NIA to determine value of the patented invention).

## VIII.   AFTER ATTORNEYS PRESENT CLOSING ARGUMENTS

I would now like to provide you with a few final instructions before you begin your deliberations.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form based on the facts as you find them from this case, following the instructions I have given you. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its rights under the laws of the United States, and this includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size, who owns them and they are to be treated as equals.

When you retire to the jury room in a few minutes to deliberate on your verdict, you will each have a copy of these final jury instructions to take with you. If during your deliberations you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered by your foreperson to the Court Security Officer. When I get that note,  I will send that exhibit or exhibits to you.

Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial and do not discuss the case at any time unless all of you are present together in the jury room.

After you have reached your unanimous verdict, your Foreperson is to fill in on the verdict form which reflects your unanimous answers to the questions in the verdict form, sign it, date it and advise the Court Security Officer. Do not reveal your answers to any question in the verdict form until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or question signed by your Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my intended response before I answer any question you might send me.

After you have reached a verdict and I have discharged you from your duty as jurors in this case, I want you to understand you are not required to talk with anyone about your service in the case. At the same time, after I have discharged you from your duty as jurors, then you are completely free, if you choose to, to discuss your service as jurors in this case with anyone that you choose. That choice will be yours and yours alone.

I will now hand the verdict form and copies of these final jury instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.